UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

MENDEN LOREN WESCOTT, III, and        Case No. 07-45160
WENDY FAY WESCOTT,        Chapter 7
       Hon. Walter Shapero

       Debtors.
_____/

## OPINION ON TRUSTEE'S § 707(b)(3) MOTION

### I. Introduction

This matter is before the Court on the U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(3) for abuse. The Court held an evidentiary hearing on September 26, 2007, and took the matter under advisement. For the reasons set forth below, the U.S. Trustee's Motion is denied.

### II. Facts

Menden and Wendy Wescott filed this chapter 7 petition on March 16, 2007. Schedule I indicated that Menden Wescott is a mechanic with a monthly net income of $2,490.02. Wendy Wescott is a dietary aide with a monthly net income of $1,817.10. Two dependents are listed. Debtors' nonpriority unsecured debt was scheduled as $70,362. The Debtors own two operational vehicles: (1) a 1998 Dodge Durango with 110,000 miles, and (2) a 1996 Dodge Intrepid with 112,000 miles.

Original Schedule J disclosed monthly expenses of $4,155.24, and a monthly net surplus of $151.88. Listed expenses on the original Schedule J included: (1) an installment payment on non-homestead realty in Antrim County, MI. of $370; (2) $37.15 for property taxes on the Antrim County

-1-

property; (3) $35 for insurance on a 2001 Dutchman travel trailer; (4) $190 for "misc., license plates, gifts;" and (5) $100 for recreation. On June 22, 2007, the U.S. Trustee filed this motion to dismiss pursuant to § 707(b)(3), asserting that payments made on behalf of the Antrim County property and the travel trailer were payments for luxury items that should be included in disposable income. The U.S. Trustee also asserted that the $190 expense for "misc., license plates, gifts," was not an appropriate deduction on Schedule J.

On July 3, 2007, the Debtors filed an Amended Schedule J followed by a response to the Motion to Dismiss. Amended Schedule J showed a monthly net deficit of $273.12 resulting from changes made to line item 13(b) entitled "installment payments: other." Amended line 13(b) increased Debtors' monthly obligation for this category of expense from $370 in the original Schedule J to $795 in the Amended Schedule J, listing the following expenditures: (1) $370 for the Antrim County property; (2) $225 for braces for their son; (3) $100 for repairs on the Dodge Durango; and (4) $100 for repairs on the Dodge Intrepid. In their answer to the Motion to Dismiss, Debtors asserted that the Amended Schedule J provided a more accurate representation of their financial situation and included "likely repairs on Debtors' 9 and 11 year old vehicles (which may need to be replaced altogether in the near future, resulting in a monthly automobile payment not accounted for on Schedule J) and for Debtors' son's braces."

On August 14, 2007, following a hearing on the U.S. Trustee's Motion to Dismiss, a second Amended Schedule J was filed along with an Amended Statement of Intention showing the Debtors' intent to surrender the Antrim County property.[1] This second Amended Schedule eliminated the $370

---

[1]The exact nature of the Debtors' interest in the Antrim County property is unclear. Schedule A lists the Debtors' interest as a tenancy by entireties. Schedule D shows the property is a land contract. The parties did not disclose the existence of any equity in (cont'd......)

Antrim County installment payment but in its place scheduled a $154 installment payment on the 2001 Dutchman travel trailer. A notation indicated that the travel trailer installment payment was scheduled "in lieu of [a] recreation expense." Property taxes on the Antrim County property remained on that Amended Schedule.

Finally, a third Amended Schedule J was filed on September 17, 2007, showing a monthly net surplus of $46.49 and listed the following expenses: (1) $0 for recreation; (2) $35 for insurance on the travel trailer; (3) $190 for "misc., license plates, gifts;" and (4) $592 scheduled on line 13(b), consisting of (a) $154 for the travel trailer "in lieu of recreation;" (b) $238 for braces for their son; (c) $100 for repairs to the Dodge Durango; and (d) $100 for repairs to the Dodge Intrepid. All expenses associated with the Antrim County property were eliminated from this third Amended Schedule J.

Evidence adduced at the evidentiary hearing on the Motion to Dismiss established that the Debtors were facing $756.51 in auto repair services on the 1998 Dodge Durango, $3,013.24 in auto repair services on the 1996 Dodge Intrepid, and owed $4,973 in orthodontics for their son. At the outset of the hearing, the U.S. Trustee withdrew his objection to the Antrim County property expenses as they were no longer scheduled, and to the $190 "misc., license plates, gifts" expense. The U.S. Trustee argued instead that the line 13(b) expenditures in the third Amended Schedule J were scheduled solely for the purpose of using up the income realized from the surrender of the

---

(.....cont'd) the property although it appears any equity is at best minimal. A reaffirmation agreement was filed with the Court on May 22, 2007, which showed the amount owed on the property as $26,820.71. The value of the property was listed on the Debtors' schedules as $28,000.

Antrim County property. The U.S. Trustee further argued that the Debtors were not in need of chapter 7 relief because they had sufficient income to fund a chapter 13 plan.

### III. Analysis

Prior to BAPCPA, § 707(b) permitted dismissal of a case if the granting of chapter 7 relief would constitute a "substantial abuse." Amendments under the BAPCPA modified the standard for dismissal under § 707(b) from "substantial abuse" to "abuse." This Court has held that the amendment from "substantial abuse" to "abuse" created a distinction so subtle that it failed in practice to effectuate a meaningful difference, at least when applied against facts like those before the Court today. *See In re Heath*, 371 B.R. 806, 814 (Bankr. E.D. Mich. 2007).

In cases where the presumption of abuse does not arise or is rebutted and where bad faith is not a factor, the Court is directed to consider whether under the totality of the circumstances granting relief would be an abuse of chapter 7. 11 U.S.C. § 707(b)(3)(B). That section provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider -
>
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3). In *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989), and later in *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 434 (6th Cir. 2004), the Sixth Circuit wrote that a totality of the circumstances inquiry under § 707(b)(3)(B) requires an assessment of whether the debtor acted dishonestly in relation to his creditors or whether the debtor is needy of chapter 7 relief. Either factor

-4-

or both together may be cause for dismissal. The U.S. Trustee focuses his argument on the Debtors' neediness.

Whether Debtors are in need of a chapter 7 discharge requires consideration of several non-exclusive factors, including: (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities. *In re Krohn,* 886 F. 2d at 126-27. Relevant to the first factor, whether the Debtor has the ability to repay debts, is whether the Debtor has sufficient disposable income to fund a hypothetical chapter 13 plan. *Behlke*, 358 F.3d at 435. This Court has held that the ability to repay obligations is an important but not necessarily determinative consideration in a neediness inquiry. *In re Shelby*, No. 06-48745, at 3-5 (Bankr. E.D. Mich. July 26, 2007).

The U.S. Trustee asserts that the Debtors could contribute the following sums to a sixty month chapter 13 plan:

$46.49 (surplus) x 60 months = $2,789.40
$238 (braces)  x 39 months = $9,282.00
$100 (Durango) x 52 months = $5,200.00
$100 (Intrepid)  x 30 months = $3,000.00

**Total**       $20,271.40

$20,271.40 - 4% statutory fee = $19,460.54

$19,460.54 ÷ $70,362 (unsecured debt) = 28% dividend to unsecured creditors.

Having reviewed the evidence, the Court finds that the Debtors do not have an ability to repay a meaningful dividend to unsecured creditors. The monies available in a chapter 13 plan in the first eight months of the plan, being funded exclusively from the scheduled monthly surplus of $46.49, equal some $371.92 ($46.49 x 8 months). Thereafter, funding at the rate of $100 per month becomes available. Almost two full years into the plan, at month twenty-one, when additional funding at a rate of $238 per month finally becomes available, the aggregate sum of Debtors' contributions into the plan would equal just $2,422.78. Using the U.S. Trustee's calculations, this would at best be a thinly funded plan and after subtraction of the statutory fee and attorney fees may not be feasible. The Court concludes that the Debtors simply do not have the means to fund a chapter 13 plan.

Further, although the Debtors are eligible for chapter 13 relief and appear to enjoy a stable income, their expenses are not facially excessive and cannot be significantly reduced without depriving them of necessities. Debtors' annualized income is $78,547.08, just above the $73,853 applicable median family income for a family of four in Michigan. Their budgeted expenses on the third Amended Schedule J are modest and offer little opportunity for meaningful belt tightening.[2] The Debtors' two vehicles are each in the range of ten years old and have in excess of 110,000 miles each. Repair of the vehicles has been ongoing, with repairs authorized based upon the urgency or priority of the need. Lesser needed repairs are essentially "wait listed" until higher priority repairs have been made. Given the age of the vehicles, their advanced mileage and already ongoing repairs, it is likely

---

[2]The Debtors' third Amended Schedule J includes a $200 deduction on line 7 for medical and dental expenses. This is in addition to the $238 expense scheduled on line 13(b) for braces. Since the U.S. Trustee did not challenge the line 7 expense and no evidence was admitted which could in any way distinguish the two deductions, the Court will assume the deduction on line 7 for medical and dental costs is valid.

-6-

Debtors will be faced with additional repair or replacement of one or both vehicles during the life of a sixty month plan.

Inclusion on Schedule J of expenses associated with a travel trailer, while unorthodox, does not under the circumstances of this case indicate an ability to belt tighten that would in any way be meaningful. Expenses related to the travel trailer were scheduled in lieu of a recreation expense and cost $189 per month inclusive of installment payments and insurance. By his own admission the U.S. Trustee does not challenge recreation expenses of $100-$150 per month. Exceeding the upper limits of the U.S. Trustee's internal guidelines on recreation expenses by $39 per month, when other aspects of the Debtors' budget are not overstated, does not convince the Court that the Debtors can significantly pare down their expenses. Requiring the Debtors to further amend Schedule J to eliminate the travel trailer expense would likely do nothing more than result in the addition of a recreation expense that would in effect nullify, or at a minimum substantially reduce, any benefit received by the travel trailer elimination.

The filing of this Motion was precipitated by the inclusion on Schedule J of a monthly installment payment and property tax deduction on non-homestead property in Antrim County, Michigan. Elimination of expenses related to that property and the subsequent addition of expenses equaling or surpassing those costs led to the U.S. Trustee's argument that the addition on Amended Schedule J of expenditures related to orthodontics, vehicle repair and a travel trailer was an attempt by Debtors to use up money generated from the surrender of the Antrim County property. Having reviewed the Schedules and the sequence with which expenses were added to or eliminated from the amendments, the Court disagrees and concludes that the Debtors' expenses are reasonable. Expenses associated with vehicle repair and braces were disclosed prior to the hearing on the Motion to Dismiss

and were listed on the Debtors' first Amended Schedule J. Costs related to the travel trailer first appeared on the second Amended Schedule J. It is the Court's view that the Amended Schedules appear to have been filed in an effort to more adequately define an acceptable budget as the Debtors contend.

The Court finds that the Debtors are in need of a chapter 7 discharge. Accordingly, the U.S. Trustee's Motion to Dismiss under § 707(b)(3) is denied. The Court will enter an order consistent with this Opinion.

Signed on January 23, 2008

```
                                  /s/ Walter Shapero
                          Walter Shapero
                          United States Bankruptcy Judge
```